**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **JOSIE J BELL,** | No   C 07-3171 VRW |
| Plaintiff, | ORDER |
| v | |
| **MICHAEL J ASTRUE,** | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Josie J Bell appeals from the decision of the Social Security Administration (SSA) denying plaintiff supplemental security income (SSI) and disability insurance benefits (DIB). The parties have filed cross-motions for summary judgment. The court DENIES plaintiff's motion and GRANTS the cross-motion by defendant Michael J Astrue.

**I**

**A**

Plaintiff was born on June 16, 1954. Administrative Record (Doc # 8) (AR) 66. Plaintiff is a high school graduate and has taken some college classes. AR 432. From 2001 until her alleged onset of disability in 2003, her occupation was "caregiver"

for In-Home Supportive Services.  AR 89.  One of plaintiff's jobs was to take care of an autistic woman by performing household duties, pushing her in a wheelchair and dressing her.  AR 433.  Her other work experience includes clerical and data entry jobs.  AR 84.  The Administrative Law Judge (ALJ) described plaintiff's work history as reflecting "very low and sporadic earnings," which he attributed to her history of substance abuse.  AR 25.

Plaintiff alleges that she became disabled on August 31, 2003 after she injured her right middle finger.  AR 66, 85, 433-34.  In her application for benefits, plaintiff listed "severe depression-psychosis, herniated disc, thyroid disorder, [right] middle finger crushed."  AR 88.

Plaintiff developed herniated discs in the lumbar spine in the 1980s while moving heavy furniture.  AR 238.  The herniated disc condition is well-documented in the record (see, e g, 269, 365, 369, 413, 416) and was credited by the ALJ as a "severe" impairment.  AR 23.

In late August 2003, plaintiff injured the middle finger on her right hand by slamming it in a car door, resulting in a "mallet finger" deformity after which plaintiff could not fully extend that finger.  AR 200-01, 433.  Although plaintiff characterized this event as the onset of her period of disability, there is little discussion of this condition in the record and the ALJ did not credit it among her "severe" impairments.

On August 6, 2004, plaintiff was taking the garbage downstairs when she slipped and fell down "eight flights of stairs," sustaining a right rotator cuff tear in her shoulder.  AR 438-40.  The limitations attributable to this injury form the crux of

2

plaintiff's appeal. Plaintiff received treatment for the shoulder injury that included several medical examinations, a magnetic resonance imaging (MRI) scan and physical therapy. A September 10, 2004 physical therapy orthopedic evaluation indicates that plaintiff had pain in reaching, lifting or using her right extremity. AR 297. She had tingling in her fingers and had difficulty "gripping." Id. Plaintiff, however, only went to two physical therapy sessions, both in September 2004. Although the treatment plan called for therapy sessions once or twice a week for several months, plaintiff cancelled one or two subsequent appointments and failed to show up for the others. AR 298-300. On December 1, 2004, plaintiff underwent a MRI scan which revealed a "[f]ull-thickness tear with atrophy and retraction of the supraspinatus tendon." Thereafter, plaintiff's medical chart notes periodically mention shoulder pain. AR 366, 369, 413, 416. For example, a progress note dated May 19, 2006 includes "Has some chronic R shoulder pain. Needs refill of meds." AR 413. The ALJ credited the rotator cuff injury as a "severe impairment." AR 23.

The record contains three reports evaluating plaintiff's physical residual functional capacity (RFC). The first two were completed before plaintiff incurred her rotator cuff injury.

On January 29, 2004, Dr Burton Brody, a consultative internist, examined plaintiff and prepared a consultative physical evaluation at the request of the SSA. AR 238-40. Dr Brody noted plaintiff's herniated discs, depression, hypothyroidism with goiter and tendinitis and opined that she had no sitting limitations and could walk and stand up to a total of four hours per day. AR 238, 240. Dr Brody found plaintiff able to lift and carry up to ten

pounds with moderate limitations on motions such as bending, stooping, kneeling, crawling, and squatting. AR 240.

On February 19, 2004, Dr Joseph W Clift, a non-examining agency physician, prepared a physical RFC evaluation based on evidence in the file, including clinical and laboratory findings, symptoms and observations. AR 287-94. Unlike Dr Brody, Dr Clift found that plaintiff could sit no more than six hours in an eight-hour workday, but could stand and/or walk for a total of about six hours. AR 288. He found that she could occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry ten pounds and could climb, balance, stoop, kneel, crouch and crawl only occasionally. AR 289.

On December 22, 2005, two months after plaintiff's October 2005 hearing before the ALJ (discussed below), treating physician Farrell C Barnett of the Alameda County Medical Center filled out a "multiple impairments questionnaire" prepared by plaintiff's attorney regarding plaintiff's physical conditions. AR 357-64. The ALJ had held the record open in order to be able to consider a report from a treating physician addressing the rotator cuff injury and plaintiff's drug use status. AR 450-56. Beginning in December 2003, Dr Barnett had seen plaintiff once every three to six months. AR 357. Dr Barnett only recorded diagnoses of hypothyroidism and right shoulder tendinitis; he did not mention lumbar difficulties. Id. According to Dr Barnett's rather sparing and cryptic markings on the questionnaire, plaintiff could sit, stand or walk for only four hours in an eight-hour day but, while it was not medically necessary for her "not to sit continuously in a work setting," she required freedom to get up and move around as

4

needed. AR 359-60. Dr Barnett opined that plaintiff could occasionally lift and/or carry no more than ten pounds. AR 360.

In response to the question "Does your patient have significant limitations in doing repetitive reaching, handling, fingering or lifting?," Dr Barnett wrote: "Yes. [Illegible] R upper extremity." Id. Dr Barnett left blank a half-page of questions designed to refine or seek more detail about upper extremity limitations. AR 301. To the question "Would your patient's symptoms likely increase if he/she were placed in a competitive work environment?," Dr Barnett first checked "no," then crossed it out and checked "yes" and inserted the handwritten note: "if she used her R arm a lot." AR 361-62. In the section on pain, Dr Barnett noted only "pain in R shoulder," which he indicated occurred "daily—often during day," rated seven on a ten-point scale and was "periodically" severe enough to interfere with attention and concentration. AR 358-59, 362. Dr Barnett checked blanks indicating plaintiff was not in his opinion a malingerer and was capable of low-stress jobs. AR 362-63.

Plaintiff's long history of depression and substance abuse takes up much of the administrative record but is not at issue on this appeal. To summarize it briefly, plaintiff received treatment in her former community in Arkansas for depression in 1998-99 and was prescribed antidepressant and antipsychotic medications. AR 167, 170. In September 2003, plaintiff voluntarily entered the Orchid Women's Recovery Center in Oakland. AR 84, 121. In November 2003, plaintiff visited Sausal Creek Outpatient Stabilization Clinic in Oakland, California for mental health outpatient care. AR 208. Plaintiff reported to the clinic

5

1 that she last used crack and alcohol just before entering the
2 recovery program. Id. Plaintiff was given Wellbutrin, an anti-
3 depressant medication to treat major depressive disorder. AR 215.

4     On January 23, 2005, plaintiff was brought to Eden
5 Medical Center after a referral from the Sausal Creek Mental Health
6 Clinic in Oakland for suicidal ideations. AR 315. Plaintiff
7 reported that she was in a lot of pain due to her rotator cuff
8 injury, fibroids in her uterus and two herniated discs and she
9 admitted that she had been using crack cocaine daily since July
10 2004. Id. She also admitted that she had drunk alcohol that night
11 and wanted to jump from the Golden Gate Bridge. Id. The treating
12 doctors prescribed Prozac and Wellbutrin for depressive disorder,
13 Levoxyl for hypothyroidism, Seroquel for psychotic conditions and
14 Vicodin for pain. AR 302. After plaintiff was stabilized, she was
15 discharged on January 26, 2005.

16     The record contains two mental RFC assessments. Both
17 concluded that plaintiff was able to carry out simple repetitive
18 tasks but not detailed instructions. Clinical psychologist Dr
19 Vicky Campagna's January 27, 2004 evaluation included the Bender
20 Visual Motor Gestalt test, the Wechsler Adult Intelligence Scale
21 III test and the Wechsler Memory Scale III test. AR 231. Dr
22 Campagna opined that plaintiff's "ability to function in a work-
23 related setting was not impaired" and she was able to learn simple
24 repetitive tasks, follow simple two- and three-part instructions
25 and sustain independent activities. AR 234. Dr Campagna diagnosed
26 plaintiff with major depression and "polysubstance dependence in
27 short-term remission" with a Global Assessment of Functioning (GAF)
28 score of 60. AR 234-35.

6

On February 18, 2004, Dr George Norbeck, a non-examining DDS physician, prepared a psychiatric review technique form, AR 242-55. Dr Norbeck checked boxes for the affective disorder "depressive syndrome" with anhedonia, appetite disturbance, sleep disturbance, decreased energy, feelings of guilt and difficulty concentrating or thinking. AR 245. He also found a substance addiction disorder to be present indicating that he had evaluated it under affective disorders. AR 250. In the section of the form dealing with rating functional limitations, Dr Norbeck indicated no restriction of activities of daily living, mild limitation in maintaining social functioning and mild to moderate limitation in maintaining concentration, persistence or pace. AR 252. On the same date, Dr Norbeck completed a mental RFC assessment in which he found no significant limitations in any of twenty areas of functioning except the ability to understand and remember detailed instructions and to carry out such instructions, which he noted to be "markedly limited." AR 283. He also marked both "not" and "moderately limited" for the ability to maintain attention and concentration for extended periods. Id.

B

On October 23, 2003, plaintiff applied for SSI and DIB under Title II and Title XVI of the Social Security Act respectively. AR 66-68, 405-06. The SSA denied plaintiff's initial application on April 2, 2004, AR 37-41, and her reconsideration request on November 29, 2004. AR 46-51. Plaintiff then requested a hearing before an ALJ, which was held on October 24, 2005. AR 428-58.

7

Plaintiff appeared at the hearing with her lawyer and testified about her physical limitations, depression and substance abuse. AR 428-58. No expert witnesses testified at the hearing. AR 430. Compared to the three reports evaluating plaintiff's physical limitations, plaintiff assessed her own RFC as more limited. Plaintiff stated that: her herniated discs caused her left leg to tremble and shake after standing for more than ten minutes or walking for more than five minutes (AR 443, 445-46); she could sit for only fifteen minutes before needing to get up and move around (AR 446); her left hand could not lift more than five to six pounds, due to limited strength on the left side of her body (AR 446-47) and the right rotator cuff tear rendered her unable to raise her right arm above her shoulder, lift anything, make a bed, curl her hair or even hold a pencil. AR 436-37. When asked what medical problems prevented her from returning to work, plaintiff testified that in 1996, she went through a divorce, her mother died and her adult son was shot. When pressed for current information, she testified that she still suffered from depression and anxiety and "a general sense of sadness all the time." AR 440-41. Plaintiff also testified that she had a history of substance abuse, including pain pills, methamphetamine and cocaine (AR 441, 444) but had stopped using drugs the day before her admission to Eden Medical Center in January of 2005. AR 444.

On March 31, 2006, the ALJ issued a ten-page decision denying plaintiff's applications. The ALJ found that: 1) plaintiff met the insured status requirements of the Act through June 2006 and had not been engaged in substantial gainful activity during the relevant period; 2) of plaintiff's impairments, the

8

cocaine dependence, major depressive disorder, degenerative disease of the lumbar spine and right shoulder rotator cuff tear were "severe"; 3) plaintiff's impairments did not meet or equal either of two listed impairments in Part 404, specifically Listing 12.04 together with 12.09 (affective disorder with substance addiction disorder) or 1.01 (musculoskeletal impairments); 4) plaintiff retained the physical RFC for sedentary work with a limitation for overhead work with the right arm but, due to drug addiction and depression, was precluded from sustained work activity; 6) due to cocaine addiction, plaintiff could not perform her past relevant work as a clerk or any other job that existed in significant numbers in the national economy.  AR 23-27.  The ALJ concluded that if plaintiff were to stop the substance use, she could perform sedentary jobs without right-arm overhead work involving simple, repetitive tasks that exist in significant numbers in the national economy.  AR 28.  Finally, the ALJ determined that because the substance use was a contributing factor material to the determination of disability, plaintiff had not been disabled within the meaning of the Social Security Act at any time through the date of the decision.  AR 29.

   The ALJ discounted Dr Barnett's opinion that plaintiff could sit only four hours in an eight-hour work day, a limitation that would have barred plaintiff from most sedentary work under **Social Security Ruling 96-9p.**  The ALJ reasoned that no weight should be assigned to Dr Barnett's sitting limitation because that functional assessment was based on plaintiff's right shoulder tendinitis only and contained "no mention of any ongoing low back pain, or limitations from lumbar degenerative disc disease."  AR

**9**

25-26. Instead, the ALJ relied on Dr Brody's consultative physical evaluation in concluding that plaintiff was limited to sedentary work as opposed to light work in accordance with non-examining physician Dr Clift's opinion. The ALJ stated:

> I credit the examination of consultative internist that the claimant is limited to sedentary work. The DDS assessed that the claimant could perform light exertion work, even considering her lumbar degenerative disc disease and moderate obesity.

AR 26. The ALJ credited Dr Brody's opinion over Dr Clift's because the latter did not examine plaintiff and credited plaintiff's complaints of lower back pain "to reduce the DDS finding of light exertion work to sedentary work." AR 26, 28.

On May 11, 2006, plaintiff requested the SSA's Appeals Council to review the ALJ decision. AR 14-16. The Appeals Council denied review, and the ALJ's decision became final. AR 8-11. On June 15, 2007, plaintiff commenced the instant action for judicial review of the final decision. After defendant answered, both parties filed cross-motions for summary judgment. Doc # 10, 11.

II

A district court's review of an ALJ's decision is limited to determining whether it is supported by substantial evidence and correct legal principles. See generally, <u>Thomas v Barnhart</u>, 278 F3d 947, 954 (9th Cir 2002). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. Id.

To determine whether a claimant is disabled and entitled to benefits, the SSA conducts a five-step sequential inquiry. 20 CFR § 404.1520. Under the first step, the ALJ considers whether the claimant is currently employed in substantial gainful activity. If not, in the second step the ALJ examines whether the claimant has a "severe impairment" that significantly affects his or her ability to conduct basic work activities. In step three, the ALJ determines whether the claimant has a condition which "meets" or "equals" the conditions outlined in the Listings of Impairments in Appendix 1, Subpart P, Regulations No 4. 20 CFR §404.1520. If the claimant does not have such a condition, in step four the ALJ considers whether the claimant can perform her past relevant work. If not, in step five, the ALJ considers whether the claimant has the ability to perform other work which exists in substantial numbers in the national economy. 20 CFR §§404.1520(b)-(f).

Even if a claimant is found "disabled" under the five-step evaluation process in 20 CFR § 404.1520, the ALJ must find the claimant "not disabled" if the medical evidence indicates that drug addiction and/or alcoholism materially contributed to the finding. <u>Parra v Astrue</u>, 481 F3d 742, 747 (9th Cir 2007). The ALJ must determine which of the claimant's disabling limitations would remain if claimant stopped abusing drugs and alcohol. 20 CFR § 404.1535(b). If the remaining limitations would not yield a disability finding, then the claimant's substance abuse is material and benefits must be denied. Id.

\\
\\
\\

11

III

Plaintiff contends that the ALJ erred in finding her not disabled. She does not challenge the ALJ's drug and alcohol analysis with regard to her mental limitations——i e, that if she discontinued her drug use, only her physical limitations would remain. Plaintiff contends, however, that the ALJ erred in ruling that plaintiff possessed the physical RFC for sedentary work excluding overhead work with the right arm because, she contends, the right shoulder tendinitis is responsible for a more grave limitation to her RFC than the ALJ's determination acknowledges.

Specifically, plaintiff contends that the ALJ improperly ignored Dr Barnett's opinion that plaintiff had significant limitations in performing repetitive reaching, handling, fingering or lifting with her right arm. Doc #10 at 12-13. Social Security Ruling 85-15 states that "reaching * * * and handling * * * are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations [that] a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [vocational expert] may be needed to determine the effects of the limitations." Similarly, fingering "is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion." Id. "The varying degrees of loss which can occur may require a decision-maker to have the assistance of a [vocational expert]." Id.

Plaintiff argues that the rules about treating source medical opinions articulated in Lester v Chater, 81 F3d 821, 830 (9th Cir 1995), govern this case. Specifically, where the treating

doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Id. In this case, the record contains no other physician's opinion about the rotator cuff because the injury occurred ten months after she had applied for benefits and after the consulting physical RFC and non-examining medical reviews had been completed. The ALJ had already delayed rendering a decision in the case in order to allow plaintiff to obtain the RFC assessment from Dr Barnett and to supplement the administrative record with it. There is, therefore, no medical evidence in the record contradicting Dr Barnett's opinion that plaintiff had significant limitations in performing repetitive reaching, handling, fingering or lifting. Plaintiff argues that Dr Barnett's opinion may be rejected only for "clear and convincing" reasons. She asks, moreover, that her case be remanded to the SSA for an award of benefits solely on the strength of Dr Barnett's scant notations on the RFC questionnaire.

There are several problems with plaintiff's argument. First, Dr Barnett's report is patently insufficient to support a disability finding. Dr Barnett left blank all the questions bearing directly on specific right upper extremity limitations: those evaluating the degree of limitation, if any, in "grasping, turning and twisting objects," "using fingers/hands for fine manipulations" and "using arms for reaching (including overhead)." AR 361. Also, Dr Barnett wrote that plaintiff's prognosis was "good" and marked "N/A" for other treatment, such as surgery and physical therapy. AR 357, 361. A reasonable reading of Dr Barnett's report is that he did not regard the right rotator cuff injury as disabling, either in the short or the long term.

13

Second, the ALJ did not discount or reject Dr Barnett's opinion, but rather credited it and used it as the basis for his step-four determination that plaintiff could not return to clerical work because of the potential for overhead tasks. AR 25. According to the Merck Manual, the rotator cuff's primary function is to provide stability during overhead arm motions:

> The rotator cuff, consisting of the supraspinatus, infraspinatus, teres minor, and subscapularis (SITS) muscles, helps stabilize the humerus in the glenoid fossa of the scapula during many athletic overhead arm motions (eg, pitching, swimming, weightlifting, serving in racket sports).

http://www.merck.com/mmpe/sec21/ch324/ch324e.html?qt=rotator%20cuff&alt=sh#sec21-ch324-ch324e-978 (consulted July 23, 2008). Imposing a limitation on overhead work with the affected arm was therefore a reasonable way for the ALJ to interpret the evidence in the record.

And finally, plaintiff failed to avail herself of physical therapy that might have helped her rotator cuff condition, a fact of considerable legal significance. 20 CFR § 404.1530 requires a claimant to follow treatment prescribed by treating physicians, clearly stating that the consequence of failing to follow treatment is denial or loss of benefits:

> If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

20 CFR § 404.1530(b). When plaintiff first presented with her rotator cuff injury, her physician prescribed a course of physical therapy. Plaintiff did not follow the course of therapy but abandoned it after two sessions. AR 297-300. At the hearing, the ALJ asked plaintiff whether she was receiving physical therapy. AR 452. Plaintiff responded misleadingly: "I don't have any medical

insurance" (AR 453) and did not tell the ALJ that she had already had a course of physical therapy scheduled and had failed to avail herself of most of it. Although the ALJ may not have been aware of this and, indeed, did not mention it in his decision, the evidence in the record documenting plaintiff's failure to follow through with prescribed therapy further buttresses the ALJ's decision. Plaintiff may not receive disability benefits without first exhausting medically prescribed treatment options available to address the alleged discomfort, weakness and decreased range of motion in her right arm and hand.

IV

For the foregoing reason, the court DENIES plantiff's motion for summary judgment and GRANTS defendant's motion for summary judgment. The clerk is directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge